UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OLSHAN FROME WOLOSKY LLP,

                  Plaintiff,

-v-

THE COMMITTEE TO RESTORE NYMOX
SHAREHOLDER VALUE INC., et al.,

                  Defendants.

CIVIL ACTION NO. 24 Civ. 2134 (ALC) (SLC)

**OPINION & ORDER**

**SARAH L. CAVE,** United States Magistrate Judge.

**I. INTRODUCTION**

As construed by the Court, pro se Defendant M. Richard Cutler moves for leave to (i) reassert his voluntarily dismissed counterclaims against Plaintiff Olshan Frome Wolosky LLP ("Olshan"); (ii) reassert joinder of nonparties Lori Marks-Esterman and Adrienne Ward to his counterclaims against Olshan; and, (iii) file a third-party complaint against nonparties Ascella Health LLC, Oldham Global LLP, Bill Oldham, and Mario Patone (the "Ascella Defendants"). (ECF No. 56 (the "Motion")). Olshan opposes the Motion as it relates to itself, Esterman, and Ward, but it takes no position as to the Ascella Defendants. (ECF No. 67). The Motion is GRANTED in part and DENIED in part as explained below.[1]

---

[1] "A motion to amend is not a dispositive motion." Media Glow Digital, LLC v. Panasonic Corp. of N. Am., No. 16 Civ. 7907 (PGG), 2020 WL 3483632, at *3 (S.D.N.Y. June 26, 2020) (collecting cases); see Fielding v. Tollaksen, 510 F.3d 175, 178 (2d Cir. 2007) (explaining that a motion to amend is non-dispositive). "A motion for joinder is also non-dispositive." Lee v. HDR Global Trading Ltd., No. 20 Civ. 3232 (ALC) (SDA), 2024 WL 4381009, at *1 n.2 (S.D.N.Y. Oct. 3, 2024) (citing Hatemi v. M&T Bank Corp., No. 13 Civ. 1103S (HBS), 2015 WL 13549199, at *1 (W.D.N.Y. Mar. 5, 2015) (collecting cases)). The undersigned therefore has the authority to decide the Motion by this Opinion and Order. See Lee, 2024 WL 4381009, at *1 (denying motion to amend by opinion and order).

## II. BACKGROUND

**1. The Complaint**

On March 21, 2024, Olshan filed the Complaint against Cutler and Defendants The Committee to Restore Nymox Shareholder Value Inc. ("CRNSV"), Randall J. Lanham, and Christopher R. Riley, seeking over $700,00 in unpaid legal fees, "plus late fees, attorneys' fees, collection costs, and interest arising out of" the legal work Olshan performed for Defendants "in connection with [their] investment in" Nymox Pharmaceutical Corp. ("Nymox"), a Bahamian corporation. (ECF No. 1 ¶¶ 1–4, 16). More specifically, in July 2023, after Cutler, Lanham, and Riley formed CRNSV, CRNSV retained Olshan "to provide advice and counsel regarding a proxy campaign in the Unites States in conjunction with legal proceedings pending in the Bahamas to remove and replace the members of Nymox's board of directors[.]" (Id. ¶¶ 2, 16). CRSV and Olshan entered into a "written Engagement Letter and accompanying Terms of Engagement" that Riley signed on behalf of CRNSV (the "Initial Engagement Letter"). (Id. ¶ 17). The Initial Engagement Letter contemplated that CRNSV would pay a $40,000 retainer, which Riley told Olshan "would be funded by a third party." (Id. ¶ 18). After Olshan received the retainer, it began, without objection, advising CRNSV "in good faith relating to [the] forthcoming proxy campaign and related matters." (Id. ¶ 19). On Defendants' request, Olshan later offered additional legal advice on two legal actions Defendants filed in the Bahamas "seeking to restore Nymox to the Bahamas Register" and seeking "to replace" Nymox's board of directors. (Id. ¶¶ 20–21). Defendants paid Olshan's legal fees through October 1, 2023. (Id. ¶ 22).

In October 2023, Olshan's scope of representation expanded "dramatically" after Defendants "asked Olshan to research and develop a litigation strategy to represent [them] in

2

pursuing certain claims[,]" and to represent them in defending an action Nymox filed against them in the Superior Court of the State of California (the "California Action"). (ECF No. 1 ¶¶ 23–24). Olshan agreed and "perform[ed] substantial work for the Defendants" in the pending litigation. (Id. ¶¶ 25–26).

As a result of the "substantially increased work" Olshan agreed to perform for Defendants, on November 13, 2023, the parties entered into an amended engagement letter, "which was accompanied by and incorporated by reference Olshan's Terms of Engagement" (the "Amended Engagement Letter"). (Id. ¶¶ 27–28). The Amended Engagement Letter provides that: (i) Defendants "understand that [they] shall be jointly and severally responsible for the payment of all fees and disbursements incurred in connection with the engagement"; (ii) "Defendants' failure to pay any amounts due [to Olshan] within thirty days of receipt of an invoice would result in a late charge of one percent (1%) per month ('late fees')" and that "the prevailing party" in a suit between the parties under the terms of the Amended Engagement Letter "would recover reasonable attorneys' fees and other costs of collection[,] even if a party represents itself or appears as co-counsel representing itself in litigation"; (iii) New York law governs "all disputes" arising under the Amended Engagement letter; and (iv) Defendants must pay a $150,000 retainer to Olshan. (Id. ¶¶ 29–34).

Lanham signed the Amended Engagement Letter on behalf of CRNSV and in his individual capacity, and Riley and Cutler signed it in their individual capacities. (Id. ¶ 32). The Amended Engagement Letter provided "for a third party to sign [it] as guarantor" of a $150,000 retainer Defendants agreed to pay. (Id. ¶ 33). Defendants did not pay the $150,000 retainer, and no guarantor signed the Amended Engagement Letter. (Id. ¶¶ 34). Even so, "Olshan continued for

3

a time to render legal services in good faith and on behalf of Defendants[,]" which "Defendants continued to accept . . . without objection." (Id.)

Olshan sent invoices to Defendants detailing the amounts due for the legal services it provided, communicated with Defendants on several occasions about "the budget and associated workstreams" with Defendants' ongoing litigation, and advised Defendants on several occasions that Olshan would seek to withdraw as counsel in Defendants' litigation if their failure to pay the $150,000 retainer and past-due legal fees persisted. (ECF No. 1 ¶¶ 35–39, 42). Despite Defendants' instruction to Olshan "to press forward on all fronts[,]" Defendants did not pay the $150,000 retainer, the invoiced amounts due to Olshan, and "further failed to provide any assurances of payments[.]" (Id. ¶¶ 38–39). The California court later granted Olshan's motion to withdraw as counsel for Defendants in the California Action. (Id. ¶ 40). Olshan alleges that Defendants failed to pay "at least $700,131.26 for services rendered and disbursements incurred by Olshan[,]" exclusive of "late charges, attorneys' fees, or collection costs, all of which are recoverable pursuant to the Amended Engagement Letter[.]" (Id. ¶ 45). To recover the unpaid legal fees, Olshan asserts claims for breach of contract, unjust enrichment, quantum meruit, and account stated against Defendants. (Id. ¶¶ 47–72).

### 2. Cutler's Answer

On May 29, 2024, Cutler filed his Answer with Counterclaims and Crossclaims. (ECF No. 24). After responding to Olshan's allegations and claims as set forth in the Complaint, Cutler stated twelve affirmative defenses and: (i) a counterclaim against Olshan and crossclaims against Esterman, Ward, and Roes 1 through 100 for legal malpractice; (ii) a counterclaim against Olshan and crossclaims against Esterman, Ward, and Roes 1 through 100 for breach of fiduciary duty

4

((i) and (ii) together, the "Original Counterclaims"); and, (iii) a crossclaim against Riley for "Fraud and Deceit—Intentional Material Misrepresentation[,]" seeking "not less than $5,000,000" in damages.[2] (See generally id.).

To support his counter and crossclaims, Cutler alleged that, in connection with Defendants' proxy contest and litigation against Nymox, "Riley represented on at least 100 occasions that Cutler would be paid for his services through payments made indirectly from Ascella Health LLC[,]" ("Ascella") and "that Ascella Health would be responsible for any and all costs, expenses, fees, charges, or other costs of anything related to the proxy contest or the related litigation" concerning Nymox. (ECF No. 24 ¶¶ 101–03). According to Cutler, "[t]wo principals and officers of Ascella formed Oldham Global, Inc." ("Oldham Global"), "for the express purpose of funding the proxy contest and related litigation. On information and belief, Ascella initially transferred funds for the proxy contest to Oldham [Global] for further transmittal to CRNSV and/or legal counsel engaged to assist with the proxy contest." (Id. ¶ 104). Cutler alleges that Ascella and Oldham Global in fact paid the first $40,000 retainer to Olshan under the Initial Engagement Letter and "paid any and all legal fees and/or expenses allegedly due through October 31, 2023." (Id. ¶ 105).

According to Cutler, when Nymox commenced the California Action, Ascella and Oldham Global engaged Olshan to defend Defendants, and Riley "provided representations and

---

[2] Cutler labels his claims against Esterman and Ward as crossclaims, but that label is inaccurate. See Fed. R. Civ. P. 13(g) (stating that a crossclaim is one asserted by one party against a coparty); (see generally ECF Nos. 24; 56). Esterman and Ward are nonparties, so the appropriate mechanism for Cutler to assert his claims against them is to move for their joinder as parties to his counterclaims against Olshan under Federal Rule of Civil Procedure 13(h). See Fed. R. Civ. P. 13(h); ADYB Eng'rd for Life v. Edan Admin. Servs. Ltd., No. 19 Civ. 7800 (MKV), 2021 WL 1177532, at *4–5 (S.D.N.Y. March 29, 2021). (See § III.B., infra).

assurances that any and all costs associated with the California Action would be paid entirely by Ascella through Oldham" Global. (Id. ¶ 109). "Olshan, []Esterman, and Ward had all advised Cutler that the California court clearly lacked personal jurisdiction over Cutler and advised that they would vigorously pursue" a "Motion to Quash Service of Summons on" Cutler ("Motion to Quash Service"), which "he relied on[.]" (Id. ¶¶ 109–10). After the parties in the California Action filed a stipulation extending the time for Defendants to respond to Nymox's complaint and stating that Cutler's "acceptance of service is not a waiver of [his] objection that the Court lacks personal jurisdiction[,]" the California court entered a minute entry accepting the stipulation and cancelling a hearing it previously set on the Motion to Quash Service (the "Minute Order"). (Id. ¶¶ 111–12). Olshan did not inform Cutler of the Minute Order or its substance. (Id. ¶¶ 113–15, 125). Later, Olshan sent Ward, "a less seasoned attorney[,]" to argue on behalf of Cutler and other Defendants against a temporary restraining order Nymox sought against them in the California Action. (Id. ¶¶ 117–19). Cutler alleges that "Olshan through . . . Ward failed to advise the Court of numerous critical arguments for failure of jurisdiction," as a result of which the court entered a temporary restraining order against them. (Id. ¶¶ 120–21).

"From October 31, 2023 through at least December 5, 2023, Ascella through Oldham [Global] failed to pay any costs or fees incurred by Olshan in direct violation of their agreement to do so." (ECF No. 24 ¶ 122). During that period, "Riley repeatedly warranted that Ascella through Oldham [Global] was and had been covering such fees." (Id.) After Olshan withdrew as Cutler's legal counsel, and despite Riley's "represent[ations] to Cutler . . . that Ascella through Oldham [Global] would pay Cutler's outstanding legal fees related" to the Nymox litigation, on

6

January 8, 2024, Ascella "withdrew its support" and "would no longer fund any of the litigation matters." (Id. ¶¶ 105, 123–24).

Cutler later "incurred the time and expense" as a pro se litigant to ask the California court to reconsider the Minute Order and hear his arguments concerning lack of personal jurisdiction. (Id. ¶¶ 125–28). Although the California court denied Culter's request, Cutler alleges that the California court "made it clear that had it properly heard the original Motion to Quash [Service], that the arguments relative to failure of jurisdiction had significant merit." (Id. ¶ 127). Cutler alleges that Olshan, Esterman, and Ward failed to "properly pursue" the jurisdictional arguments and provide him a copy of the Minute Order. (Id. ¶¶ 127, 132–49). Cutler also alleges that Olshan overbilled Defendants; he contends that the time Olshan spent on its legal representation of Defendants is "unconscionable related to any reasonable level of fees for comparable counsel." (Id. ¶¶ 141–42; 145–46).

### 3. Voluntary Dismissal of Cutler's Original Counterclaims and Crossclaim

On July 2 and 9, 2024, respectively, after the Court set a briefing schedule on Olshan's, Esterman's, and Ward's anticipated motion to dismiss the Original Counterclaims, Cutler voluntarily dismissed them under Federal Rules of Civil Procedure 41(a) and (c). (ECF Nos. 27; 28; 32; 33; 39). On July 12, 2024, Cutler also voluntarily dismissed without prejudice his crossclaim against Riley under Federal Rules of Civil Procedure 41(a) and (c). (ECF No. 40). He voluntarily dismissed the counter and crossclaims because the parties had "entered into significant settlement discussions . . . intended to incentivize Olshan to seek redress against the actual party responsible for fees: [the Ascella Defendants,]" so Cutler "determined that the pending counterclaim[s] and cross-claim became an impediment to resolution of the matter due to the

7

legal costs incurred by Olshan in appropriately responding" to the Original Counterclaims. (ECF No. 56 at 4 ¶ 13).

The Honorable Andrew L. Carter so-ordered the parties stipulation and proposed scheduling order, which allowed the parties "to file and serve amended pleadings . . . as a matter of course under Federal Rule of Civil Procedure 15" by October 9, 2024. (ECF No. 45). Judge Carter then referred the case for general pretrial supervision. (ECF No. 46).

### 4. The Motion

On January 8, 2025, the Court granted Cutler's request for leave to file a motion to amend his Answer to the Complaint. (ECF No. 54). On January 31, 2025, Cutler filed the Motion, seeking leave to join third parties and (re)assert counterclaims and third-party claims.[3] (See generally ECF No. 56). Cutler did not submit a proposed pleading, but he stated that his proposed counterclaims against Olshan, Esterman, and Ward are "in all respects identical to the previously filed [Original Counterclaims] against" them (the "Proposed Counterclaims"), and he submitted his declaration setting forth new factual allegations concerning the Ascella Defendants. (ECF No. 56 at 7, 10–14). Cutler did not specify which claims he intends to pursue against the Ascella Defendants, but he declared that Bill Oldham and Mario Patone "represented" and "were officers of Ascella[,]" which together with its affiliate, Oldham Global, "cover[ed] costs and expenses" relating to Olshan's representation of Defendants, as described above. (Id. at 12 ¶¶ 7–8). Cutler

---

[3] Cutler labels his claims against the Ascella Defendants as crossclaims. (See generally ECF No. 56). Again, that label is inaccurate. Compare Fed. R. Civ. P. 13(g) with Fed. R. Civ. P. 14(a). The Ascella Defendants are nonparties who Cutler contends are "liable . . . for all or part of [Olshan's] claim[s] against" him, so Cutler's proposed claims against the Ascella Defendants are third-party claims that must be alleged in a third-party complaint under Rule 14(a). Fed. R. Civ. P. 14(a).

further declared that Olshan filed the Complaint against Defendants only after Ascella failed to pay amounts due to Olshan, and that the Ascella Defendants, not Defendants, are ultimately responsible for any money owed to Olshan in this case. (Id. at 12–13 ¶¶ 9–12, 15). He seeks to reassert the Proposed Counterclaims and file a third-party complaint because "Olshan in bad faith failed to continue to work with [D]efendants to reach resolution [of this case] and to pursue" the Ascella Defendants instead of Defendants for payment. (Id. at 4 ¶¶ 14–16).

On January 31, 2025, Cutler requested an extension of the February 13, 2025 discovery deadline up to and including July 15, 2025 because of the Motion and his representation that he "ha[d] just begun his discovery in this matter[,]" despite the nearly eleven months that elapsed since Olshan filed the Complaint. (ECF No. 55). The Court granted a brief extension of discovery up to and including March 17, 2025, pending the outcome of the Motion. (ECF No. 60).

In light of Cutler's pro se status, we construe the Motion as seeking leave to: (i) reassert the Proposed Counterclaims for legal malpractice and breach of fiduciary duty against Olshan, which are identical to the Original Counterclaims (see ECF Nos. 24 ¶¶ 88–143; 56 at 7); (ii) reassert joinder of nonparties Esterman and Ward to the Proposed Counterclaims against Olshan; and (iii) file a third-party complaint against the Ascella Defendants pursuant to Federal Rule of Civil Procedure 14(a)(1). (ECF No. 56). Olshan opposes the Motion on behalf of itself, Esterman, and Ward, but it takes no position as to the Ascella Defendants. (ECF No. 67). Cutler filed a reply. (ECF No. 69). The Motion is ripe, opposed as it relates to Olshan, Esterman, and Ward, and unopposed as it relates to the Ascella Defendants.

9

### III. LEGAL STANDARDS

**A. Federal Rule of Civil Procedure 15(a)(2)**[4]

Federal Rule of Civil Procedure 15(a)(2) provides that a court "should freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) encourages courts to determine claims "on the merits" rather than disposing of claims or defenses based on "mere technicalities." Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 283 (2d Cir. 2000).[5] The Second Circuit has explained that "district courts should not deny leave [to amend] unless there is a substantial reason to do so, such as excessive delay, prejudice to the opposing party, or futility." Friedl v. City of N.Y., 210 F.3d 79, 87 (2d Cir. 2000). Courts in this District have held that denial of a motion to amend is appropriate where "(1) the movant is guilty of undue delay, (2) the movant has acted in bad faith, (3) the amendment would be futile, or (4) the amendment would prejudice the opposing party." Procter & Gamble Co. v. Hello Prods., LLC, No. 14 Civ. 649 (VM) (RLE), 2015 WL 2408523, at *1 (S.D.N.Y. May 20, 2015) (citing State Tchrs. Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981)); see Williams v. Citigroup Inc., 659 F.3d 208, 213–14 (2d Cir. 2011) (per curiam) (reiterating Supreme Court precedent explaining proper grounds for denying motion to amend as "undue delay, bad faith or dilatory motive on the part of the movant, . . .

---

[4] We do not interpret the parties' so-ordered Stipulation and Scheduling Order to set a deadline after which amended pleadings are prohibited, instead, it set an October 9, 2024 deadline "for any party that presently has the right to serve an amended pleading" to do so "as a matter of course[,]" that is without leave of court. (ECF No. 45 at 1). Thus, the more liberal standard in Rule 15(a)(2), rather than the "good cause" standard in Federal Rule of Civil Procedure 16(b), applies. See Sacerdote v. N.Y. Univ., 9 F.4th 95, 115 (2d Cir. 2021), cert. denied, 142 S. Ct. 1112 (2022) (explaining that "[t]he period of liberal amendment [under Rule 15(a)(2)] ends if the district court issues a scheduling order setting a date after which no amendment will be permitted"); Cherotti v. Exphand, Inc., No. 20 Civ. 11102 (SLC), 2022 WL 2108604, at *6 (S.D.N.Y. June 10, 2022) (applying Rule 15(a)(2) standard where case management plan did not set a "date after which all amendments were prohibited").

[5] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment").

While a party may move to amend under Rule 15(a)(2) at any stage of litigation, when "a proposed amendment is based on 'information that the party knew or should have known prior to the deadline [to file an amendment], leave to amend is properly denied.'" Hyo Jung v. Chorus Music Studio, Inc., No. 13 Civ. 1494 (CM) (RLE), 2014 WL 4493795, at *2 (S.D.N.Y. Sept. 11, 2014) (citing Soroof Trading Dev. Co. v. GE Microgen, Inc., 283 F.R.D. 142, 147 (S.D.N.Y. 2012)); see Procter & Gamble Co., 2015 WL 2408523, at *2–3 (finding undue delay and prejudice where party was aware of information well before deadline to amend pleadings but waited ten months to move to amend).

Prejudice occurs when an amendment would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." Soroof Trading, 283 F.R.D. at 147 (citing Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993)). An amendment is futile if it would not survive dismissal under Rule 12(b)(6) for want of "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Brodt v. City of N.Y., 4 F. Supp. 3d 562, 567 (S.D.N.Y. 2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Facial plausibility exists when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

B. **Federal Rules of Civil Procedure 13(h), 19, 20, & 21**

Rule 13(h) provides that "Rules 19 and 20 govern the addition of a person as a party to a counterclaim or crossclaim." Fed. R. Civ. P. 13(h). "Rule 13(h) only authorizes the court to join additional persons in order to adjudicate a counterclaim or cross-claim that already is before the court or one that is being asserted at the same time the addition of a nonparty is sought." ADYB, 2021 WL 1177532, at *4 (quoting F.D.I.C. v. Bathgate, 27 F.3d 850, 873 (3d Cir. 1994)); see also Grupo Dataflux v. Atlas Global Grp., L.P., 541 U.S. 567, 580 n.9 (2004) (noting that Rule 13(h) "applies only to persons other than those made parties to the original action").

Rule 19 governs required joinder of parties. Fed. R. Civ. P. 19. Joinder of a party under Rule 19 entails a two-step analysis: (1) whether the absent party belongs in the suit, i.e., qualifies as a "necessary" party, and (2) whether joinder of the absent party is feasible and will not deprive the Court of subject matter jurisdiction. Viacom Int'l, Inc. v. Kearney, 212 F.3d 721, 724–25 (2d Cir. 2000).

> Under the first step of the Rule 19 analysis, a party is necessary to an action when:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>   (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
>   (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

Generally, a party to a contract that is the subject of the litigation is a necessary party. ADYB, 2021 WL 1177532, at *5 (collecting cases). Conversely, "[a] nonparty to a commercial contract ordinarily is not a necessary party to an adjudication of rights under the contract." ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc., 102 F.3d 677, 682 (2d Cir. 1996) (quoting Northrop Corp. v. McDonnell Douglas Corp., 705 F.2d 1030, 1044 (9th Cir. 1983)). These propositions are "descriptive not prescriptive." Gibbs Wire & Steel Co., Inc. v. Johnson, 255 F.R.D. 326, 330–31 (D. Conn. 2009) (citing Jonesfilm v. Lion Gate Int'l, 299 F.3d 134, 141 (2d Cir. 2002)). "Courts have repeatedly cautioned . . . that the Rule 19 inquiry is a fact specific and practical one, which should not be based on formalistic or mechanistic grounds but rather on pragmatic analysis of the effect of a potential party's absence." Polargrid LLC v. Videsh Sanchar Nigam Ltd., No. 04 Civ. 9578 (TPG), 2006 WL 2266351, at *9 (S.D.N.Y. Aug. 7, 2006) (collecting cases).

The party moving for joinder under Rule 19 bears the burden of demonstrating that joinder is appropriate. ADYB, 2021 WL 1177532, at *5; accord Errico v. Stryker Corp., No. 10 Civ. 3960 (VM) (JLC), 2010 WL 5174361, at *2 (S.D.N.Y. Dec. 14, 2010). District courts have "broad discretion" when considering Rule 19 and may consider matters outside the pleadings. Rahman v. Shiv Darshan, Inc., No. 12 Civ. 3457 (ILG) (CLP), 2013 WL 654189, at *5 (E.D.N.Y. Feb. 22, 2013); see also Holland v. Fahnestock & Co., Inc., 210 F.R.D. 487, 495 (S.D.N.Y. 2002) (collecting cases).

Rule 20 governs permissive joinder of parties. Fed. R. Civ. P. 20. Under Rule 20, a nonparty may be joined as a counterclaim-defendant if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20 (a)(2).

"The purpose of Rule 20 is to promote trial convenience and to expedite the resolution of disputes, thereby preventing multiple lawsuits." Deskovic v. City of Peekskill, 673 F. Supp. 2d 154, 159 (S.D.N.Y. 2009). "Permissive joinder rests with the sound discretion of the Court, which must determine if joinder will comport with the principles of fundamental fairness." Shaw v. Munford, 526 F. Supp. 1209, 1213 (S.D.N.Y. 1981). The moving party bears the "burden of demonstrating that [its] claims arise out of the same transaction or occurrence for purposes of Rule 20." Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A., 596 F. Supp. 2d 821, 827 (S.D.N.Y. 2008).

To determine whether Rule 20's "transaction or occurrence" requirement is met, courts in this Circuit apply the "logical relationship" test that the Second Circuit applies in the context of Rule 13 to assess whether a counterclaim arises out of the same transaction or occurrence as the original claim. See, e.g., Abraham v. Am. Home Mortg. Servicing, Inc., 947 F. Supp. 2d 222, 228 (E.D.N.Y. 2013); Peterson v. Regina, 935 F. Supp. 2d 628, 637 (S.D.N.Y. 2013). Under that test, the "transaction or occurrence" requirement is met where "the essential facts of the claims [are] so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." Jones v. Ford Motor Credit Co., 358 F.3d 205, 209 (2d Cir. 2004); accord Trainum v. Rockwell Collins, Inc., No. 16 Civ. 7005, 2017 WL 1093986, at *2 (S.D.N.Y. March 9, 2017).

Where joinder is proper, Rule 21 authorizes the court to "at any time, on just terms, add . . . a party." Fed. R. Civ. P. 21. "The same liberal standard for amending pleadings under Rule 15(a) applies to the joinder of parties under Rule 21," but "is subject to the 'good cause'

requirement of Rule 16([b]) if the time to join additional parties has expired." Kleeberg v. Eber, 331 F.R.D. 302, 315 (S.D.N.Y. 2019). "In exercising its discretion under Rule 21, the court must consider principles of fundamental fairness and judicial efficiency[,]" considering "whether an order under Rule 21 would prejudice any party, or would result in undue delay." In re Merrill Lynch & Co. Res. Repts. Sec. Litig., 214 F.R.D. 152, 155 (S.D.N.Y. 2003).

### C. Federal Rule of Civil Procedure 14

Rule 14 provides that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). The third-party plaintiff must obtain the court's leave if "it files the third-party complaint more than 14 days after serving its original answer." Id. "[T]he right to implead third parties is not automatic," however, "and the decision whether to permit impleader rests within the sound discretion of the district court." Consol. Rail Corp. v. Metz, 115 F.R.D. 216, 218 (S.D.N.Y. 1987); see Fed. R. Civ. P. 14(a)(4) ("Any party may move to strike the third-party claim, to sever it, or to try it separately."). Generally, "timely motions for leave to implead third parties should be freely granted unless to do so would prejudice the plaintiff, unduly complicate the trial, or would foster an obviously unmeritorious claim." Nova Prods., Inc. v. Kisma Video, Inc., 220 F.R.D. 238, 240 (S.D.N.Y. 2004). When determining whether to permit the filing of a third-party complaint, courts may consider whether the movant deliberately delayed or was derelict in filing the motion, whether impleader would result in prejudice to any of the parties or would delay or unduly complicate the trial, and whether the proposed third-party complaint states a cause of action upon which relief can be granted. See Cowie v. SodexoMagic LLC, No. 20 Civ. 3151 (JPC), 2021 WL 11709765, at *1 (S.D.N.Y. Feb. 15, 2021); State

Mut. Life Assur. Co. v. Arthur Andersen & Co., 65 F.R.D. 518, 521 (S.D.N.Y. 1975). The exercise of the Court's "considerable discretion" is guided primarily by the balance between "the benefits derived from impleader" and "the potential prejudice to the plaintiff and third-party defendants." Too, Inc. v. Kohl's Dep't Stores, Inc., 213 F.R.D. 138, 140 (S.D.N.Y. 2003).

"The general purpose of the rule [is] to avoid two actions which should be tried together to save the time and cost of a reduplication of evidence, to obtain consistent results from identical or similar evidence, and to do away with the serious handicap to a defendant of a time difference between a judgment against him and a judgment [in] his favor against the third-party defendant." Dery v. Wyer, 265 F.2d 804, 806–07 (2d Cir. 1959). "Impleading a third-party is appropriate where the third-party defendant's liability to the third-party plaintiff is dependent upon the outcome of the main claim or the third-party defendant is potentially secondarily liable as a contributor to the defendant." iBasis Glob., Inc. v. Diamond Phone Card, Inc., 278 F.R.D. 70, 74 (E.D.N.Y. 2011). "The traditional grounds for a third-party action are indemnification, contribution, or subrogation." Id.

## IV. DISCUSSION

### A. Proposed Counterclaims Against Olshan, Esterman, and Ward

Olshan, on behalf of itself, Esterman, and Ward, contend that the Motion should be denied (i) as futile because Cutler fails to state claims for legal malpractice and breach of fiduciary duty against them, and (ii) because the Motion was filed after undue delay, in bad faith, and granting it would prejudice them. (ECF No. 67 at 16–24). Cutler disagrees and asserts in his reply brief additional facts in support of the Proposed Counterclaims. (ECF No. 69 at 3–11). To the extent Cutler alleges new facts or arguments for the first time in his reply brief, the Court will not

consider them. Snyder v. Graham, No. 09 Civ. 10307 (RJS) (KNF), 2012 WL 983536, at *5, 10 (S.D.N.Y. March 22, 2012) (declining to consider new facts and arguments raised for the first time in a reply brief); Montanio v. Keurig Green Mountain, Inc., 276 F. Supp. 3d 212, 223 (D. Vt. 2017) (same) (collecting cases).

We conclude that Cutler's request to reassert the Proposed Counterclaims against Olshan comes after undue delay and will prejudice Olshan, and we deny it on that basis. Cutler had and passed on the opportunity to pursue the Original Counterclaims at the outset of the case, but he voluntarily dismissed them without prejudice–the risk of doing so is what the Proposed Counterclaims fall prey to here: satisfying Rule 15(a)(2). See Procter & Gamble Co., 2015 WL 2408523, at *1. The case is over a year old, Cutler voluntarily dismissed the Original Counterclaims eight months ago, discovery has closed, and the Proposed Counterclaims allege claims—legal malpractice and breach of fiduciary duty—that would no doubt require additional months of discovery on topics outside the scope of Olshan's claims against Defendants. (See ECF Nos. 1; 24; 33; 39; 56; 60). The posture of the case, lack of satisfactory explanation for filing the Motion after an eight-month delay when discovery was ongoing, and the prejudice associated with reasserting the Proposed Counterclaims now all cut against granting leave. Although Cutler asserts that he voluntarily dismissed the Original Counterclaims in pursuit of a settlement, that justification will not alone justify his delay in seeking to reassert the Proposed Counterclaims at this stage of the case because no new information was gathered in the eight months between the time of voluntary dismissal and when he filed the Motion. See Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990) (affirming denial of leave to amend where "no satisfactory explanation is offered for the delay" in moving to amend). The additional discovery

into the Proposed Counterclaims would require the parties to expend significant additional resources and would significantly delay the resolution of Olshan's claims, both of which amount to prejudice under Rule 15(a)(2). Soroof Trading, 283 F.R.D. at 147.

Accordingly, the Motion is denied as to Cutler's request for leave to reassert his Proposed Counterclaims for legal malpractice and breach of fiduciary duty against Olshan, as is his request to join Esterman and Ward to the Proposed Counterclaims. We, therefore, need not consider whether the Proposed Counterclaims are futile or are brought in bad faith.

B. **Joinder of the Ascella Defendants**

The Motion and Cutler's Declaration aver that the Ascella Defendants are responsible in whole or in part for any judgment against Defendants on Olshan's claims. (ECF No. 56 at 2–5 ¶¶ 1–16; 12–13 ¶¶ 7–12, 15). The Motion to join the Ascella Defendants comes late, especially because discovery has closed, but unlike the Proposed Counterclaims, Cutler's request to join them does not appear "deliberate" or "derelict." Ouattara v. Amazon.com, Inc., No. 22 Civ. 1753 (JLR), 2022 WL 17167983, at *2 (S.D.N.Y. Nov. 22, 2022). Moreover, trial has not been set in this case and minimal, if any, prejudice will befall the parties from a brief discovery extension to ascertain the Ascella Defendants' involvement in Olshan's claims. See id. Cutler may have a plausible claim for indemnification, contribution, or subrogation against the Ascella Defendants, and joining them satisfies Rule 14's "general purpose . . . to avoid two actions which should be tried together to save the time and cost of a reduplication of evidence, to obtain consistent results from identical or similar evidence, and to do away with the serious handicap to a defendant of a time difference between a judgment against him and a judgment [in] his favor against the third-party defendant." Dery, 265 F.2d at 806–07.

Unlike the Proposed Counterclaims, Cutler's proposed third-party claims against the Ascella Defendants relate directly to Olshan's claims against Defendants and the discovery the parties have already completed. The Ascella Defendants will not face undue prejudice after they are joined because they may assert all available defenses and will be given the opportunity to engage in limited additional discovery with Olshan and Defendants. See Ouattara, 2022 WL 17167983, at *2–3 (impleading third-party defendants on claims for contractual indemnification, contribution, and common law indemnification where Rule 14 considerations were met).

Cutler did not file a proposed third-party complaint setting forth—and the Motion does not affirmatively state—the domicile of each Ascella Defendant, so it is unclear whether the addition of the Ascella Defendants will deprive the Court of its subject matter jurisdiction. In deference to Cutler's pro se status, however, and recognizing that the Ascella Defendants will have the opportunity to raise jurisdictional defenses, Cutler's request to file a third-party complaint against the Ascella Defendants is granted, subject to "ordinary jurisdictional requirements." Chase Manhattan Bank, N.A. v. Aldridge, 906 F. Supp. 866, 868–69 (S.D.N.Y. 1995) (dismissing third-party complaint for lack of subject matter jurisdiction after plaintiff impleaded third-party defendants in a diversity case).

## V. CONCLUSION

Accordingly, the Motion (ECF No. 56) is **GRANTED in part and DENIED in part** as follows**:**

1. Cutler's motion for leave to refile his counterclaims for legal malpractice and breach of fiduciary duty against Olshan is **DENIED**;

2. Cutler's motion for leave to join nonparties Lori Marks-Esterman and Adrienne Ward as counterclaim-defendants to his counterclaims against Olshan is **DENIED**;

3. Cutler's motion for leave to file a third-party complaint against Ascella Health LLC, Oldham Global LLP, Bill Oldham, and Mario Patone is **GRANTED**, and on or before **April 4, 2025** Cutler shall file his third-party complaint, pursuant to Federal Rule of Civil Procedure 14(a).

4. Cutler is reminded that he is responsible for timely serving both a summons and the third-party complaint on each of the third-party defendants.

The Clerk of Court is respectfully directed to close ECF No. 56.

Dated:    New York, New York
          March 21, 2025

SO ORDERED.

_____
**SARAH L. CAVE**
**United States Magistrate Judge**